UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                                  Case No. 04-CR-117

CAROL GRAHAM-HAYES,
and ELIJAH HAYES,

        Defendants.

_____

## ORDER

On June 21, 2005, Magistrate Judge Patricia Gorence recommended that this court deny Elijah Hayes (Hayes) and Carol Graham-Hayes'(Graham-Hayes motions to suppress. Hayes filed a timely objection to the recommendation on June 28, 2005; and Graham-Hayes, through her attorney Christopher Bailey, also filed a timely objection to the recommendation on June 30, 2005. On July 1, 2005, the government filed a timely letter of response. The objections are now fully briefed and ready for decision. The court reviews the motion to suppress *de novo*. *See* 28 U.S.C. § 636(b)(1).

PROCEDURAL BACKGROUND

On May 18, 2004, a grand jury sitting in this district returned a six count indictment charging Hayes and Graham-Hayes with various credit card and financial institution fraud charges. Count One charges both defendants with conspiring to violate 18 U.S.C. § 1344 (1) by executing a scheme to obtain money and other things of value from federally insured financial institutions through materially false representations. Count Four charges both defendants with violations of 18 U.S.C. § 1029(a)(3), and Count Five charges both defendants with violations of 18 U.S.C. § 1029(a)(2); by possessing and using 15 or more unauthorized credit card account numbers that had been stolen or obtained with the intent to defraud.

Counts Two and Three charge defendant Hayes with violations of 42 U.S.C. § 408(a)(7)(B) by falsely representing social security numbers that he knew were not assigned to him by the Commissioner of Social Security for the purposes of opening a bank account (as to Count Two) and obtaining an instruction permit from the Wisconsin Division of Motor Vehicles (as to Count Three). Count Six charges defendant Graham-Hayes with violations of 18 U.S.C. § 513(a) by knowingly making, uttering, and possessing a counterfeit security of an organization with the intent to deceive.

On June 25, 2004, defendant Hayes was arraigned and entered a plea of not guilty. On July 22, 2004, defendant Graham-Hayes was arraigned and entered a plea of not guilty. Hayes and Graham-Hayes entered conditional guilty pleas at hearings held before the court on July 7, 2005, and July 8, 2005, respectively.

On November 30, 2004, Hayes filed a motion to suppress all items seized in a July 10, 2002 search of the defendant's apartment. On December 1, 2004, Graham-Hayes filed two motions to suppress fruits of the search conducted at her home in California on March 12, 2003, and fruits of the search conducted at her home in Milwaukee on July 10, 2002. These three motions to suppress allege constitutional deficiencies regarding the two searches occurring on July 10, 2002 and March 12, 2003. Each of the motions to suppress requested evidentiary hearings, which were held before Magistrate Gorence on April 14, 15, and 27, 2005.

## ANALYSIS

### 1. July 10, 2002 Search

In April 2002, a warrant was issued for the arrest of Hayes for an alleged probation violation. On May 29, 2002, Deputy Douglas Bachert of the United States Marshals Service went to Hayes' residence to execute the arrest warrant. He arrived at 4947 N. 47th Street, Apt. No. 2, the address indicated on the arrest

- 3 -

warrant, and knocked on the door. When there was no response, he obtained a key from Mr. Willie Page, the caretaker of the four-unit building, and entered Hayes' apartment unit. In an effort to locate Hayes, Deputy Bachert looked throughout the premises in places where a person might be, but he did not find Hayes. During the 5-10 minutes Bachert was in the residence, he observed several identification cards and social security numbers near a computer. Deputy Bachert was ultimately unable to locate Hayes, and he did not seize any documents or evidence he observed while he was on the premises.

The Seventh Circuit has held that a police officer with an arrest warrant may enter the defendant's residence to execute the warrant if there is reason to believe that the defendant will be inside. *United States v. Pallais*, 921 F.2d 684, 690 (7th Cir. 1990). If there is a reason to believe that the defendant will be inside, the officer executing the arrest warrant does not need a search warrant. *Payton v. New York*, 445 U.S. 573, 603 (1980). If necessary, an officer may search the entire premises in an attempt to locate the individual to execute an arrest warrant. *See Payton*, 445 U.S. at 589.

Deputy Bachert's May 29, 2002 entrance into Hayes' residence was done with reason to believe that Hayes would in fact be in the apartment. Several conversations corroborated this belief, thereby making it reasonable for Deputy

- 4 -

Bachert to believe Hayes would in fact be in the apartment. For example, the probation officer assigned to Hayes' case provided Deputy Bachert with this address and also informed Deputy Bachert that Hayes would likely be at the apartment. (April 14, 2005 Evidentiary Hearing Tr. at 22 (Hereinafter "Tr.")). Additionally, Deputy Bachert spoke with the caretaker of the building, Willie Page, who informed Deputy Bachert that he recently had seen Hayes at the apartment. (Tr. at 26.) Pursuant to *Pallais* and *Payton*, because Deputy Bachert believed that Hayes would be in the apartment, his entry into the premises was not improper.

Graham-Hayes' June 30, 2005 objection to the recommendation contends that Deputy Bachert did not enter the premises with a reason to believe that Hayes, in fact, would be in the apartment, and thereby making it distinguishable from the holdings in *Pallais* and *Payton*. However, it was seemingly well-established through the evidentiary hearing that Deputy Bachert was provided with a sufficient amount of information to make a reasonable belief that Hayes would be in the apartment. ( *See* Tr. at 24-27.)

Upon entering the premises with the intent to execute the arrest warrant, Deputy Bachert conducted a cursory search throughout the premises in an attempt to locate Hayes. During the evidentiary hearing, Deputy Bachert stated

that he was in Hayes' apartment no longer than 5-10 minutes, well within a reasonable time frame necessary to determine whether or not Hayes was present. (Tr. at 29.) During this cursory search, Deputy Bachert observed several documents, including papers with names and social security numbers on them; although Deputy Bachert did not move, manipulate, or inspect these items. (Tr. at 29-30.) When it appeared clear to Deputy Bachert that Hayes was not in the apartment, he left the premises and returned the key to Mr. Page. *Id.* Deputy Bachert's cursory search is also within the bounds of *Pallais;* he searched only in places where a person was likely to be found, and exited the premises when he realized the defendant was not there. *See Pallais*, 921 F.2d at 691 (citing *Payton v. New York* and noting, "police armed with an arrest warrant can search the entire residence of the person named in the warrant to execute it").

On July 9, 2002, Deputy Bachert obtained a search warrant for records and other information to assist him in locating Hayes, and returned to Hayes' residence on July 10, 2002, to execute the warrant. During the search, Deputy Bachert obtained false identification cards and other apparently fraudulent documents that Hayes now seeks to suppress.

The court concludes that the evidence obtained during the July 10, 2002 search is not subject to suppression. There has been no evidence or indication that Deputy Bachert exceeded the scope of the arrest warrant or the subsequent search warrant executed in an effort to locate Hayes. In sum, in an attempt to execute the May 29, 2002 arrest warrant, Deputy Bachert entered the premises with the intent to locate Hayes, and subsequently properly executed a search warrant in furtherance of that task.

2. March 13, 2003 Search

On March 10, 2003, Mr. John Simpkins, of the United States Postal Service, observed a partially-opened package that was improperly placed in the priority mail distribution center where he works. Mr. Simpkins noticed this package was in a manila envelope, and not the appropriate red, white, and blue priority mail package. (Tr. at 59.) The package was uneven, bulky, and over-stuffed. (Tr. at 70.) As the package dropped down the conveyer belt, he observed three small cards fall from it, two of which he observed to be social security cards. (Tr. at 61.) He thought this was suspicious because the return address on the package was not the Social Security Administration. (Tr. at 62-63.) Suspecting that this may be evidence of identity theft, Mr. Simpkins

- 7 -

notified his supervisor, Albert Winbush, who then handed the package over to the manager distribution operator, Rufus Smith. (Tr. at 66.) The United States Attorney's Office was subsequently contacted to obtain an anticipatory search warrant. When the anticipatory search warrant was obtained, Postal Inspector Kim Gordon, operating in an undercover capacity, delivered the package to the address listed. After the package's delivery, the search warrant was executed by Police Postal Inspectors. When the postal inspectors entered the premises, Hayes was on the floor, and Graham-Hayes was caught in the spokes of the iron fence in the backyard; Graham-Hayes was then brought back to the residence. During the execution of this search warrant, documents and a computer that was believed to be used in criminal activity were seized, and several pictures of the premises were taken.

The United States Supreme Court has held that sealed items sent through the mail are entitled to Fourth Amendment Protections. *United States v. Jacobsen*, 466 U.S. 109,114 (1984). The Seventh Circuit has held that a person asserting Fourth Amendment protections in sealed mail must have standing to allege that a particular search was performed in violation of the Fourth Amendment. *United States v. Koenig*, 856 F.2d 843, 846 (7th Cir. 1998). One who is the sender, addressee, or one who exerts ownership or control over a piece of mail would have

- 8 -

standing to challenge an unlawful search or seizure of the item. *Id.* Outside of these contexts, it is unlikely that a privacy interest exists such that it would provide standing and entitle an individual to challenge an unlawful search or seizure on Fourth Amendment grounds. *See id.*

The search challenged by Graham-Hayes involves a package that was neither addressed to nor sent by her. She also has failed to assert an ownership interest in or the ability to control the package once it was delivered; thus, Graham-Hayes is unable to establish a privacy interest that would provide her with the requisite standing to challenge an unlawful search of the package. *See United States v. Koenig*, 856 F.2d at 846.

Graham-Hayes alleges that she does have standing to challenge the search of the package because it contained identification cards with her pictures on them. However, the Seventh Circuit has held that absent the above-listed circumstances, an individual is not able to establish the appropriate privacy nexus to challenge an search. *See id.*

Magistrate Gorence entertained *arguendo* Graham-Hayes' arguments that she did in fact have standing to challenge the search of the package, and the court adopts the following arguments from the recommendation.[1]

Graham-Hayes first alleged that the search and seizure of the package was unlawful because the plain-view doctrine does not apply to packages in the mail, citing *Collins v. Wolff.* In *Collins*, the court determined that first class mail in question was not subject to opening or inspection without a search warrant. *Collins v. Wolf,* 337 F. Supp. 114, 116 (D. Neb. 1972). The court also stated that it "does not see how the 'plain view' doctrine can be applied to mail in the custody of the post office department" because if the package was damaged, it would likely be through the fault of the postal department. *Id.* at 117. However, *Collins* is not controlling authority for this court, and furthermore, the reason the *Collins'* court rejected the notion that the plain view doctrine couldn't apply to mail is eviscerated in this instance: it is likely that the reason the package was partially open was due to improper packaging, not because of improper handling by the postal department. *See id.*

---

[1] Defendant Hayes is also challenging the search of the package, however, the Magistrate Judge previously found that Hayes lacked standing and filed untimely objections and is unable to challenge this search. Defendant Hayes filed an objection to the recommendation on June 28, 2005; however, his objections in large part focused on what he believed to be factual inaccuracies as to Mr. Simpkins' testimony at the evidentiary hearings, not legal inadequacies of the recommendation.

- 10 -

The Seventh Circuit has recognized that the plain view doctrine may appropriately apply to pieces of mail in transit and in the custody of the postal department. In *United States v. Allman,* the court held that if an object in plain view created probable cause for a postal department employee to believe that a federal law was being violated, then the plain view doctrine is applicable. *See United States v. Allman*, 336 F.3d 555, 556 (7th Cir. 2003)(holding that a "pivot pin" protruding from a parcel of mail was in plain view and created probable cause that federal fire arms laws were being violated).

If certain requirements are met, a law enforcement officer may seize evidence in plain view and conduct a warrantless seizure of the incriminating evidence. *Horton v. California*, 496 U.S. 128, 134-37 (1990). As Magistrate Gorence noted, three requirements must be met: (1) the officer did not violate the Fourth Amendment in his plain view of the evidence, (2) the officer must have lawful right of access to the object, and (3) incriminating nature of the evidence must be apparent. *Id.* at 136-37.

The first requirement of *Horton* is easily met; Mr. Simpkins was at work performing his regular duties when he viewed the suspicious package. Clearly, no Fourth Amendment violation occurred. The second requirement pursuant to

*Horton* is also easily met because Mr. Simpkins was following the proper postal department protocol when he notified his supervisor of the suspicious package and had it taken from the distribution belt.

Lastly, Mr. Simpkins is also able to satisfy the third requirement of *Horton* because of several facts adduced at the hearing. Mr. Simpkins testified that he observed two social security cards fall out of the package, yet neither the return address nor the addressee was a government agency. Secondly, Mr. Simpkins testified that a sheet with several numbers and identification pictures also fell out of the package. Although Mr. Simpkins may have had a piqued sensitivity to these items since he had recently undergone postal department training to recognize suspicious mail material relating to identity theft, the incriminating nature of these items is nonetheless quite apparent. (*See* Tr. at 66.) Therefore, even if Graham-Hayes did in fact have standing, the seizure of this package was not constitutionally deficient. *See Horton* at 136-37.

The incriminating documents lawfully observed in plain view provided the basis for the anticipatory search warrant of the California home. Because the documents were viewed without violation of the Fourth Amendment, the subsequent search conducted on March 13, 2003, was also lawful.

Graham-Hayes' objection filed June 30, 2005, states that the doctrine of inevitable discovery should result in the suppression of evidence as to the March 13, 2003 search. However, as stated above, even if Graham-Hayes did have standing to challenge the search, an application of the plain view doctrine renders the seizure of the package and subsequent search constitutionally sufficient, thereby eviscerating the need for the court to address the doctrine of inevitable discovery. Therefore, the motion to suppress items seized pursuant to this search must be denied.

Accordingly,

IT IS ORDERED that Magistrate Judge Patricia E. Gorence's June 21, 2005 Recommendation be and the same is hereby ADOPTED; and

IT IS FURTHER ORDERED that the defendants Elijah Hayes and Carol Graham-Hayes' motions to suppress be and the same are hereby DENIED.

Dated at Milwaukee, Wisconsin, this <u>  31st  </u> day of August, 2005.

BY THE COURT:

<u>  s/ J. P. Stadtmueller             </u>
J. P. Stadtmueller
U.S. District Judge